Herbert KLEIN, individually and dba
Herb's Bar, Plaintiff,

v.

AUTO OWNERS INSURANCE CO., a
Michigan corporation, Mill Owners Mutual Insurance Co., an Iowa corporation,
and Ohio Farmers Insurance Company,
an Ohio corporation, Defendants.

No. 4–65–Civ–190.

United States District Court
D. Minnesota,
Fourth Division.

Dec. 29, 1965.

Norman Perl, Minneapolis, Minn., for plaintiff.

Samuel Levin, Chicago, Ill., and G. Alan Cunningham, Minneapolis, Minn., for defendants.

DEVITT, Chief Judge.

Defendant Fire Insurance Companies move for judgment n. o. v. or for a new trial following the jury's return of a verdict for $35,000 in plaintiff's action to recover for loss occasioned by a fire to his Minneapolis bar on January 11, 1965.

Jurisdiction is established by the requisite diversity of citizenship and the amount involved.

It is admitted that the three insurance carriers had issued policies of fire insurance totalling $40,000 and that the policies were in effect covering the contents, improvements and betterments of plaintiff's bar on the day of the fire. Defendants asserted the defenses of (1) arson and (2) filing fraudulent proofs of loss.

In the court's view the jury erred in returning a verdict for the plaintiff because its verdict was contrary to the clear weight of the evidence and the grant of a new trial is necessary to prevent a miscarriage of justice. There was some evidence, however, to support the verdict, and in such case the court is without authority to grant judgment n. o. v.

The evidence in support of the defense of arson was strong, convincing and com-

pletely inconsistent with any other explanation for the origin of the fire.

The Minneapolis Fire Department responded quickly to the alarm in the early morning of January 11, 1965. The front door was locked. The two remaining doors to the premises were found locked by bolts from the inside. A basement opening to the adjoining premises was found sealed closed. The firemen broke it down.

There was no evidence of a break-in to support the theory of a burglary in connection with which a fire had been set to "cover up" the burglary. Plaintiff said he locked the front door by key when leaving the premises at 2:30 P. M. the previous day. The only other keys to the premises were possessed by the bartenders and the janitor. No evidence connected them with the fire. Plaintiff said he did not suspect them and that no person had made any threats against him or his property. He had no known enemies.

The fire was systematically prepared by the spreading of some 200 to 300 burlap bags soaked, as was the carpeting, by an estimated 20 gallons of petroleum. Minneapolis Fire Department Arson Investigator Joseph P. Woods said that it would have taken at least two hours to make the necessary preparations. The bags were methodically spread throughout the building. Bar stools and chairs were temporarily removed, and later replaced over the bags, apparently to insure a wide-spread conflagration. Colored photo slides of the premises reflected the care and thoroughness of the preparatory operations. Were it not for the lack of sufficient oxygen to feed the fire, the graphic evidence of the incendiary origin of the fire would have gone up in smoke before the arrival of the firefighters. Joseph Woods, a very credible witness, said the fire was of incendiary origin.

The plaintiff did not dispute the incendiary origin of the fire but pointed to evidence of apparent burglary of the bar's safe in support of a theory that the fire was set to cover up a burglary. But the evidence in this regard, or the lack of it, points convincingly to a well-planned fire with burglary overtones to conceal the incendiarism.

The safe allegedly burglarized was small and compact, easily movable. The wise burglar would have pulled it out the front door in short order to effect his mission. Evidence of burglary was made manifest while proof of arson was concealed. The blow-torch and equipment were left by the safe while the containers for the estimated 20 gallons of petroleum were not found—apparently removed from the premises in advance.

In short, there was little credible evidence to buttress the theory of burglary, and overwhelming proof of arson.

The plaintiff was losing money in his 14-month-old bar business. In only two months was he in the black—some $170 in July, 1964 and near $500 in December, 1964. The bar had lost $16,183.41 in the 14-month period.

Klein was heavily in debt. His accountant testified that he was $43,818 in the red at the end of 1963, $57,408.25 in the red at the end of 1964.

Plaintiff made many efforts to improve his bar business. The near loop location in the wholesale produce area of Minneapolis was not viewed as a good one for the liquor business. Free parking, lunches and live entertainment were customer inducements made by Klein to improve his business, but without marked success.

Klein testified that he did not set the fire or engage another to do so. He said he was home watching the late show on television. No person supported his presence at home near the time of the fire. His wife, apparently at home at the time, did not testify.

This evidence, of which the above is a highlighted summary, makes out

about as good a case for incendiarism as a defense to a claim on a fire insurance policy as would be possible. To be sure, it is all circumstantial evidence but how often is it possible to prove the actual lighting of the match? As the Supreme Court of Iowa has observed, "One could scarcely be expected to set fire to his property in the presence of others." Koonts v. Farmers Mut. Ins. Ass'n of Van Buren County, 235 Iowa 87, 16 N.W.2d 20, 24. Proof of arson may be made by circumstantial evidence. Stein v. Girard Ins. Co., 259 F.2d 764 (7th Cir). The proof in cases of this kind consists almost wholly of circumstantial evidence. Davis v. Security Ins. Co., 139 Neb. 730, 298 N.W. 678.

Defendants base their motions not only on the claimed overwhelming evidence against the verdict as to the arson issue, but as to the claimed fraud in the filing of the proof of loss as well, and also upon the claimed misconduct of plaintiff's counsel. There is some merit in the claim of misconduct of counsel in the various respects urged—that he elicited testimony that the building loss fire claim had been settled, stated in oral argument that the police had satisfactorily checked out plaintiff's story, told the jury that the defendants had imported Chicago lawyer Sam Levin for the purpose of weaving a web of deception, and more, all of which was improper and not supported by evidence, and which may have prejudiced the jury, but we are prompted to grant a new trial principally because the verdict is contrary to the clear and overwhelming weight of the evidence on the arson issue.

■■ The court views it as its unmistakable responsibility to grant a new trial where, as here, the evidence is so clearly against the verdict returned by the jury. Rule 59 of the Federal Rules of Civil Procedure, 29 U.S.C.A. recognizes the common law principle that it is the duty of the trial judge who is not satisfied with the verdict to set it aside and grant a new trial. The trial court has the responsibility to see that justice is done in each case. Barron and Holtzoff, Federal Practice and Procedure, Sec. 1302 and cases cited. Aetna Casualty and Surety Co. v. Yeatts, 4th Cir., 122 F.2d 350. This principle is recognized by the Court of Appeals for this Circuit and its employment is urged upon the trial courts in appropriate cases. Altrichter v. Shell Oil Co., 263 F.2d 377, 8th Cir. 1959. This is an appropriate case.

■ Affording full respect to the jury's findings, the court is left with the definite and firm conviction that the jury made a mistake in returning the verdict it did. In the interests of justice, the error must be corrected.

The motion for judgment n. o. v. is denied. The motion for a new trial is granted.