Herbert G. STARLINGS, Plaintiff,

v.

SKI ROUNDTOP CORPORATION t/d/b/a Ski Liberty and the Garcia Corporation, Defendants.

Civ. A. No. 79–46.

United States District Court, M. D. Pennsylvania.

July 8, 1980.

James R. Ronca, Harrisburg, Pa., for plaintiff.

Hugh M. Emory, Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

On January 26, 1977, the plaintiff was injured while skiing at Ski Liberty, a ski area located in Adams County, Pennsylvania. The instant action was filed in the federal court on the basis of diversity. Trial commenced on April 7, 1980. On April 8, 1980, the jury returned a verdict in favor of the plaintiff in the amount of $100,000. Judgment on the verdict was entered on April 9, 1980. Defendant timely filed post-trial motions, which include a motion for judgment notwithstanding the verdict, a motion for a new trial or in the alternative, for a remittitur of the damages. The defendant has withdrawn its motion for judgment notwithstanding the verdict.

The defendant's request for a new trial is twofold:

1. the jury failed to find negligence on the part of the plaintiff; and

2. the court erred in permitting the jury to consider as part of the damage claim evidence of plaintiff's increased risk of arthritis.

The standard applied to a motion for a new trial is much different than that applied to a motion for judgment notwithstanding the verdict. The court in *Keystone Floor Products Co. v. Beattie Mfg. Co.*, 432 F.Supp. 868 (E.D.Pa.1977), clearly and succinctly described the distinction as follows:

> In considering defendant's motion for judgment notwithstanding the verdict it is the Court's function to determine whether there is substantial evidence in support of the jury's verdict. A judgment n. o. v. may not be granted unless, as a matter of law, it is found that plaintiff failed to present a case for the jury, and that a verdict in defendant's favor should have been directed at the end of the trial. *Neville Chemical Company v. Union Carbide Corp. (Neville)*, 422 F.2d 1205, 1210 (3d Cir. 1970); *Gatenby v. Altoona Aviation Corporation (Gatenby)*, 407 F.2d 443 (3d Cir. 1968). Substantial

evidence, that is, legally sufficient evidence, is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969); *Smith v. B. P. Tanker Company, Ltd.*, 395 F.Supp. 582 (E.D.Pa.1975). In making this determination the trial judge must view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471 (3d Cir. 1973).

On the other hand, in considering a motion for new trial the trial judge's discretion goes further than a mere inquiry as to the sufficiency of the evidence. Even where there is substantial evidence the trial judge may set aside a verdict for the reason that it is against the clear weight of the evidence, or that damages are excessive, or that substantial errors occurred in the admission or rejection of evidence. *Neville, supra* at 1221; *Silverii v. Kramer*, 314 F.2d 407, 413 (3d Cir. 1963); *Lind v. Schenley Industries, Inc. (Lind)*, 278 F.2d 79, 87 (3d Cir. 1960); Wright & Miller, *Federal Practice and Procedure*: Civil § 2805.

■ Although the trial judge's discretion in determining a motion for a new trial goes further than "mere inquiry as to sufficiency of the evidence", it is not limitless. In *Tennant v. Peoria and Pekin Union Railway Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), the Court held that although a trial court may have come to a different conclusion, trial judges are not free to reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions.

Addressing more particularly the issue of witness credibility, the court in *Lind, supra*, quoted with apparent approval an excerpt from Professor Moore's work, which states:

"[S]ince the credibility of witnesses is peculiarly for the jury it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict. The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts, and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. *The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.*" *Lind, supra* at 97. (footnote omitted) (emphasis added).

■ In the case *sub judice*, there were conflicting accounts about the accident. The jury weighed the evidence and the credibility of the witnesses and rendered its verdict accordingly. This court is satisfied that sufficient probative evidence supported the jury's finding on liability. Defendant's request for a new trial, with respect to liability, will be denied.

Defendant's second basis for his motion for a new trial is that the court allegedly erred in permitting the jury to consider, as part of the damage claim, testimony on plaintiff's increased risk of arthritis. The pertinent testimony of Dr. William Smulyan is as follows:

Q  You stated, Doctor, that you could either hear or feel some clicking or popping or rubbing in the knee?

A  That is right.

Q  Is that significant to you?

A  It is significant in that certainly from his injury and the subsequent surgery, one can be certain that there is a significant amount of scar tissue formation or adhesions formed within the knee. This may be contributing to the crepitus.

In addition, an injury to the joint may be producing some degenerative changes or wear and tear type of changes to the joint surfaces. This may also be contributing to some of this grinding sound.

Q  Does that mean that he has an increased risk of arthritis in that knee because of this injury that he had?

A  I think it is fair to say that the possibility of his developing degenerative or wear and tear changes is greater having had that type of an injury than it would be without having had that type of an injury.

Q  This clicking and popping, is this an indication that perhaps some of these changes have already started?

A  At best, perhaps. It is quite possible to hear these noises for a long time without noting significant or rapid deterioration of a given situation.

Q  Does a normal, healthy knee have these kind of sounds?

A  No.

(Transcript of videotaped deposition of Dr. William Smulyan, shown to the jury on April 8, 1980, pp. 22–23).

Dr. Smulyan testified further on the likelihood of localized arthritis as follows:

Q  Thank you. With regard to any likelihood of localized arthritis, any susceptibility of Mr. Starlings to arthritis as a result of a trauma would be only to this knee; is that correct?

A  Again, I think that is a difficult question to give you a yes or no answer. I think that susceptibility to degenerative or wear and tear arthritis in the absence of trauma is largely a genetic or hereditary problem followed closely by what an individual does for his work, followed closely by body habitus or body size.

However, a traumatically involved joint such as this I think is placed at an increased risk for the development of degenerative or wear and tear arthritis depending on what his genetic predisposition would be.

Q  If there is any additional risk, it would be only in that knee as opposed to an arthritic condition that would start in that knee as the result of the trauma and spread through the shoulders?

A. That type of an arthritic process does not bear any relationship.

Q  They are entirely separate?

A  That is correct. Here you can speak only of wear and tear arthritis which is synonymous with degenerative arthritis, which is synonymous with osteoarthritis. Any other type of arthritis such as rheumatoid arthritis or any of the diseases which are similar to this type of a problem at this stage of the game would appear to bear no cogent relationship to the problem.

Q  So for purposes of simplifying the matter in my own mind, the increased likelihood of arthritis in Mr. Starlings' case is speaking only in terms of the injured knee?

A  That is correct.

(Deposition, *supra* at pp. 34–35).

While Dr. Smulyan used the word "possibility" in his diagnosis, a review of his entire testimony gives some indication that the plaintiff was already experiencing degenerative changes in the knee. Dr. Smulyan was even more definite in his response to cross examination when he made the following statement:

However, a traumatically involved joint such as this I think *is* placed at an increased risk for the development of degenerative or wear and tear arthritis depending on what his genetic predisposition would be. (Deposition, *supra* at pp. 34–35). (emphasis added.)

While a jury may not use sheer conjecture as a basis for arriving at a verdict, a jury may use a measure of speculation in aiming at a verdict or an award of damages. *Dixon v. Pennsylvania Railroad Co.*, 378 F.2d 392, 394 (3d Cir. 1967). An even greater degree of flexibility is granted in regard to testimony concerning prospective or future damages as they are "at best, not always easy or certain of ascertainment. They are to a large extent based on probabilities and uncertainties." *Russell v. City of Wildwood*, 428 F.2d 1176, 1181 (3d Cir. 1970). Based upon the totality of the evidence presented, the court is of the opinion that submission of the arthritis issue to the jury was proper and that the jury did not base its decision upon pure speculation.

Although the court is of the opinion that certain testimony on the arthritis issue was properly submitted to the jury, the

court nevertheless is of the opinion that the verdict of $100,000.00 was so clearly excessive in light of the damage testimony as to shock the conscience of the court. *Edynak v. Atlantic Shipping Inc. CIE. Chambon Maclovia S. A.*, 562 F.2d 215, 226 (3d Cir. 1977); *Lambert v. PBI Industries*, 244 Pa. Super. 111, 366 A.2d 944 (1976). In *Kemp v. Philadelphia Transportation Co.*, 239 Pa. Super. 379, 361 A.2d 362 (1976), the court enunciated several factors deemed relevant in determining whether an award was so grossly excessive as to shock the court. They include severity of injury, whether injury is demonstrated by physical evidence or by subjective testimony of the plaintiff, whether the injury is temporary or permanent, the plaintiff's ability to continue with employment, the out of pocket expenses to plaintiff, and plaintiff's demand for damages when suit was instituted.

Plaintiff suffered a tear of several ligaments in the knee, requiring corrective surgery. A second, albeit minor, operation was required to remove a staple connecting the ligament to the bone. There is no question that plaintiff has demonstrated, by physical evidence, the existence of the injury. The injury has been described as a 25% permanent partial disability in the knee due primarily to the limited degree of extension and rotation capabilities, accompanied by slight stiffness, scar, and probable degenerative arthritis. Plaintiff cannot return to his work as a telephone lineman but has been reassigned to a different position with the same employer, without reduction in pay or benefits. No evidence was presented for a loss in earning capacity. The out of pocket expenses were $1,950.72 in medicals and $3,099.20 in lost wages. In his pre-trial conference memorandum, plaintiff demanded approximately $36,000.

After careful consideration of the salient facts, the court has determined that the jury's verdict in this instance cannot be supported by the evidence. Accordingly, plaintiff will be directed to file a remittitur with this court of all sums in excess of $50,000. Failure to file such a remittitur within twenty (20) days of the filing of this order will result in defendant being granted the right to a new trial on the issue of damages only.