MEMORANDUM OPINION

SPORKIN, District Judge.
This matter comes before the Court on Plaintiffs’ motion for a new trial and to apply collateral estoppel against the Defendants.

A Procedural History

This case involves claims against three Defendants, Tyler Abell, the Chase Estate, and James Toomey. The facts of this litigation have been set out in two opinions by the Court of Appeals and need not be completely reiterated here. See Whelan v. Abell, 953 F.2d. 663 (D.C.Cir.1992) (“Whelan I”), Whelan v. Abell, 48 F.3d. 1247 (D.C.Cir.1995) (“Whelan IP). Essentially, after a trial on the issue of liability for tortious interference, a jury returned a verdict against the Defendants in favor of Andrew Whelan and in favor of the Defendants with respect to Edward Whelan’s cause of action. The issue of damages was not heard in that proceeding. After the trial judge entered a judgment n.o.v. in favor of the Defendants, Plaintiffs appealed. This resulted in the Whelan I decision.
*46 On remand from the Court of Appeals in the Whelan I decision, the posture of the case to be tried was as follows: 1) the damage claim resulting from the tortious interference jury verdict in favor of Andrew Whelan against all the Defendants; 2) The liability and damage claims for abuse of process and malicious prosecution by Andrew and Edward Whelan against all the Defendants. On motion of the Defendants, this Court set aside the default judgment against the Chase Estate and granted judgment as a matter of law in favor of Defendants on all claims. Plaintiffs appealed this Court’s decision.
On March 10, 1995, the Court of Appeals handed down its opinion in Whelan II. In that opinion, the Court of Appeals overturned the district court and instructed this Court as follows:
Subject to any objections that defendants have preserved, we remand the case for the court to enter judgment against Abell and Toomey on Andrew Whelan’s tortious interference claim and for a new trial against all three defendants on the Whe-lans’ remaining claims of malicious prosecution and abuse of process. So long as the reinstated tortious interference verdict is not set aside, the court should enter judgment on that claim against the Chase Estate in favor of both Andrew and Edward Whelan.
48 F.3d at 1260.
In accordance with the instructions from the Court of Appeals decision in Whelan II, on November 9, 1995, this Court issued an Memorandum Opinion and Order, inter alia, entering judgment against Abell and Toomey on Andrew Whelan’s tortious interference claim and judgment against the Chase Estate on both Andrew and Edward Whelan’s claims of tortious interference.
The Court was left to try the following claims:
1. Andrew Whelan’s damage claim for the tortious interference claim against Toomey, Abell and the Chase Estate.
2. Edward Whelan’s damage claim for the tortious interference claim against the Chase Estate only.
3.Edward and Andrew Whelan’s liability and damage claims against Toomey, Abell and the Chase Estate for malicious prosecution and abuse of process.

B. Andrew Whelan’s Damage Claim

Essentially because of the complexity of the matter and in fairness to the parties, the Court ordered to be tried first the issue of Andrew Whelan’s damage claim on the reinstated liability verdict in the tortious interference action against Toomey, Abell and the Chase Estate. On January 19, 1996, after a 14-day trial on the damage issue, the jury returned a verdict in favor of the Defendants Toomey, Abell and the Chase Estate and awarded no damages to Andrew Whelan.

Plaintiffs’ Motion for a New Trial

Plaintiff Andrew Whelan has moved for a new trial on the issue of damages.

New Trial Standards

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, “A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.” Motions for a new trial are addressed to the sound discretion of the trial court. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Rule 59 recognizes that it is the duty of the trial judge to set aside a verdict and grant a new trial where the verdict does not comport with the interests of justice. Klein v. Auto Owners Ins. Co., 39 F.R.D. 24 (1965).
In ruling on a motion for a new trial, the trial judge has a greater degree of discretion than when ruling on a motion for judgment as a matter of law. Crown Central Petroleum Corp. v. Brice, 427 F.Supp. 638 (E.D.Va.1977). Even if the evidence in support of the verdict is substantial, the trial judge may order a new trial if the verdict is against the clear weight of the evidence, if the damages awarded are excessive, or substantial errors occurred during the proceedings. Starlings v. Ski Roundtop, 493 *47 F.Supp. 507 (M.D.Pa.1980); Baber v. Buckley, 322 A.2d. 265, 266 (D.C.App.1974) (new trials may be ordered where “there has been a legal error in the proceeding, the damages are excessive, the trial court was unfair, or the verdict was contrary to the weight of the evidence.”).

Seventh Amendment Claim

Plaintiff argues that the jury finding of no monetary damage constitutes a violation of his Seventh Amendment right to a fair trial. Plaintiff contends that the jury verdict of liability in the first trial must result in some monetary award to Plaintiff and that the only way the jury could have concluded that Plaintiff was entitled to no monetary award was by impermissibly refuting the decision of the earlier jury on the issue of liability.
The Court has reviewed the record. The jury was repeatedly instructed that the issue of liability had been decided in Plaintiffs favor and that the sole issue to be decided was the amount of damage if any that Plaintiff sustained. This was clear from the Court’s preliminary instructions to the jury:
Now this case was divided into what they call the liability phase and the damage phase. The earlier trial was held to determine whether the defendants committed a civil wrong against the Plaintiff and that wrong is known as intentional interference with a prospective business advantage. * * * And that jury found that there was an intentional interference with a prospective business advantage of Mr. Whelan. * * * In other words, the first jury said, there was a Intentional Interference with the prospective business advantage of Mr. Whelan. Now the question is: Were there any damages? and if you find that there were: In what amount of ... ? That’s your duty* * *.
Trial Trans., Dec. 18, 1995, at 36. Similar admonitions were given to the jury throughout the trial and in the final instructions to the jury. See Tr.Trans.Vol. 13, p. 117, 120. Thus, the trial record is clear that the jury was instructed to consider the issue of damages only.
Plaintiff takes issue with specific jury instructions on the issue of damages. Although Plaintiff has extrapolated several paragraphs from the jury instructions in his motion for a new trial, the actual jury instructions given by this Court take up six pages of the trial transcript. Tr.Trans, January 13,1996,188-124.
Plaintiff challenges jury Instruction No. 14. In its entirety it reads:
You shall award the plaintiff a sum of money that will reasonably compensate him for all the damages suffered by him that were caused by the actions of the defendants.
If you find that plaintiff has shown by a preponderance of the evidence that he has sustained a monetary loss, you are to make an award in an amount that will compensate him for his losses. He is entitled to recover a sum of money that you find necessary to compensate him for the business advantages that he lost.
In finding for Andrew Whelan on the issue of liability, the first jury did not write him a blank check. Andrew Whelan still shouldered the burden of proving each element of his damage claim. The Plaintiff introduced evidence of his damages through expert testimony.[1] Defendant put on his own expert to rebut Plaintiffs damage claim. Based upon this evidence, the jury found that Andrew Whelan failed to prove his damage claim. Plaintiff makes much of the fact that the jury awarded him no damages at all, not even nominal damages. In discussing its instructions with counsel prior to submission to the jury, the court provided the parties with a draft verdict form that indicated a space for the jury to award nominal damages if it decided to do so. At the specific request of Plaintiffs counsel, the nominal damage line item was deleted. Clearly, Plaintiff has waived his right to criticize the jury for not awarding him nominal damages in view of plaintiffs request to delete any reference to *48 nominal damages on the verdict form. The Plaintiff had a strategy of wanting the Court to minimize any reference to nominal damages. That the Plaintiffs strategy backfired does not permit him to assign as error the fact that the jury awarded him no damages— not even nominal damages. Plaintiffs motion for a new trial will be denied.

C. Edward and Andrew Whelan’s claims against Toomey, Abell, and the Chase Estate

The Court is now prepared to try Edward and Andrew Whelan’s claims of malicious prosecution and abuse of process against Toomey, Abell and the Chase Estate. In pre-trial motions, Plaintiffs have moved to apply “offensive” collateral estoppel against the Defendants.
Specifically, Plaintiffs argue that some of the elements inherent in malicious prosecution and abuse of process are common to the tortious interference claim that has already been decided in Plaintiff Andrew Whelan’s favor. As to those issues, Plaintiffs seek to estop Defendants.

Collateral Estoppel

The doctrine of collateral estoppel prevents a defendant from relitigating identical issues that the defendant has already litigated and lost against another plaintiff. see, e.g., Jack Faucett Associates v. American Tel. & Tel., 744 F.2d 118, 125 (D.C.Cir.1984). The trial court has broad discretion to determine when it should be applied. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329-331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). However, the trial court should not allow the use of collateral estoppel when its application would be “unfair to a defendant” Parklane Hosiery, 439 U.S. at 331, 99 S.Ct. at 652.
The Court of Appeals in this Circuit has stated the elements that must be present before a Court can apply collateral estoppel:
1.The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.
2. The issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial.
3. Preclusion in the second trial must not work an unfairness.
In Parklane Hosiery, the Supreme Court provided an example of the possible unfairness that may result from the imprudent application of collateral estoppel:
“Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estop-pel is itself inconsistent with one or more previous judgments in favor of the defendant.”
Parklane Hosiery, at 330, 99 S.Ct. at 651 (footnote omitted).
In the 1989 trial, the jury returned a verdict in favor of Andrew Whelan and against Edward Whelan on the issue of liability for tortious interference. Despite this seemingly inconsistent verdict, Plaintiffs argue that both Whelans should be entitled to the 1989 jury verdict in favor of Andrew Whelan on issues that will bolster their claims in the upcoming trial. Plaintiffs’ analysis suggests that this Court take the favorable findings from the general jury verdict in favor of Andrew Whelan, and ignore the unfavorable finding of the same jury verdict against Edward Whelan. The infirmity of such an approach is obvious on its face. It would require the Court to engage in rank speculation as to what the jury found and what it did not find. While there is some commonality in the elements necessary to prove the torts of abuse of process and malicious prosecution, with those of tortious interference, they are not sufficiently “common” to warrant the application of “offensive” collateral estoppel. Commissioner v. Sunnen, 333 U.S. 591, 599-600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948) (collateral estoppel “must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding”). Thus, this Court declines to allow the application of “offensive” collateral estoppel in this matter.
Plaintiffs also argue that the Court is bound to apply the first jury verdict in favor *49 of Andrew Whelan as the controlling “law of the case.” This argument is nothing more than a repackaging of Plaintiffs’ collateral estoppel argument and is similarly unsustainable.

D. Remaining Issues

As the Court of Appeals stated in Whelan II:
“Subject to any objections that defendant’s have preserved, we remand the case for the court to enter judgment against Abell and Toomey on Andrew Whelan’s tortious interference claims and for a new trial against all three defendants on the Whe-lans’ remaining claims of malicious prosecution and abuse of process.”
Whelan II, at 1262 (emphasis added).
Following the directions of the Court of Appeals and in fairness to the parties, this Court will hold a trial on Edward and Andrew Whelan’s claims of malicious prosecution and abuse of process against all three Defendants. The trial will include both the liability and damage phases. The remaining phase of the case, Edward Whelan’s damage claim against the Chase Estate on his tor-tious interference claim, will be heard at a later date. An appropriate Order follows this opinion.
ORDER
This matter comes before the Court on various motions from the parties. For the reasons stated in its Memorandum Opinion of this date, the Court hereby
ORDERS that Plaintiff Andrew J. Whe-lan’s motion for a new trial on damages resulting from his tortious interference claim be DENIED. It is further
ORDERED that Plaintiffs Andrew and Edwards Whelan’s motion to apply “offensive” collateral estoppel against the Defendants be DENIED. It is further
ORDERED that the Whelans’ claims of malicious prosecution and abuse of process be tried before this Court on November 25, 1996, and it is further
ORDERED that Edward Whelan’s damage claim against the Chase Estate in Whe-Ian’s tortious interference claim be tried at a later date.

. Plaintiff only engaged the services of a qualified expert upon the urging of the Court shortly before trial. This was done in fairness to Plaintiff to assure that he presented the best case possible.