**John W. DIXON, Jr., Appellant,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, a Corporation.**

**No. 16169.**

United States Court of Appeals Third Circuit.

Argued March 6, 1967.

Decided May 10, 1967.

Paul E. Moses, Pittsburgh, Pa. (Robert B. Ivory, Evans, Ivory & Evans,

Pittsburgh, Pa., on the brief), for appellant.

David B. Fawcett, Jr., Pittsburgh, Pa. (David P. Truax, Dickie, McCamey & Chilcote, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Dissatisfied with his recovery of a $4000 verdict in a Federal Employers' Liability Act action for negligent personal injury, John Dixon, a signalman employed by the Pennsylvania Railroad, is here asking for a new trial limited to the question of damages.

Appellant was injured when a telephone pole, weighing about a thousand pounds, became dislodged and rolled down from a pile striking the back of his right leg at the calf. After the impact, appellant's leg was pinned between that pole and another.

Appellant received medical attention immediately after the accident at a nearby hospital and the next day at the employer's dispensary. His leg was bandaged and a course of hot whirlpool treatments was inaugurated. The company doctor permitted appellant to return to work the next day but recommended that he stay off of the leg as much as possible.

A signalman's work may include a variety of services in connection with construction, maintenance and repair of communication facilities. Among these services are the repair of signals and switches and the construction and repair of lines. Line work necessitates climbing poles.

For a month after the accident appellant was assigned sedentary work. Thereafter, he returned to the performance of general signalman's duties except that he was not assigned tasks which would involve climbing or heavy lifting. Nearly a year after the accident the company doctor rescinded an earlier direction that appellant refrain from climbing. However, no jobs involving climbing were assigned to him, and as of May, 1966, when this case was tried, he still had not attempted to climb.

The whirlpool bath treatments were continued regularly for about a year, and intermittently thereafter. On his doctor's recommendation appellant rested his leg for about ten weeks during the spring of 1964. Aside from this, he has lost no time from work because of his injury. His employment status has continued to be that of a full time signalman.

At trial, appellant testified that from time to time ever since the accident he had experienced pain in his leg while at work, and that it had been necessary to rest the leg after work and on weekends instead of subjecting it to the strain of vigorous activity around the home as had been his practice before the injury. He also wears an elastic stocking at work.

There was medical testimony that hemorrhaging within the calf at the time of the accident and subsequent absorption and reorganization within the injured area left a certain amount of scar tissue in the muscles. This condition, called fibrositis of the musculature, continued at the time of the trial, nearly three years after the accident. There was no prospect of substantial change in this condition, although exercise and the continuation of physiotherapy were recommended. The recommendation of exercise was coupled with the caution that pain caused by exercising the muscles would necessitate occasional rest. At the same time the medical witnesses agreed that appellant could continue to perform such work as he was doing at the time of trial. Indeed, such exercise was recommended.

With this showing in the record, the trial judge, over the plaintiff's objection, instructed the jury that no award could be made for impairment of future earning capacity. At the same time the court made it clear that "he is to be compensated for the pain that he incurs while he is working". The court also charged

that "everybody seems to agree that there was some disability" and that compensation is allowable for that. Thus, only the question of future impairment of earning power was eliminated from jury consideration.

The principal contention of the appellant in this connection is that the jury should have been permitted to find that the appellant's ability to climb was and would be limited and, therefore, that he could not do a substantial part of the work normally required of a signalman. However, there was no medical or other testimony that he could not or should not climb, and the employer's doctors had cleared him for climbing work about a year after the accident. His own doctor testified merely that ability to climb could be determined only by climbing, and the appellant had not tested his leg by attempting to climb. A second doctor characterized the condition of the leg as annoying rather than disabling.

On this record we think the jury could not rationally have found it more probable than not that the appellant's climbing ability was substantially impaired or that he could not satisfactorily perform all normal duties of a signalman. Of course the plaintiff bore the burden of proof on this issue. And, although it is sometimes said that a jury may use a "measure of speculation" in arriving at a verdict or an award of damages, Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916, sheer conjecture cannot be the basis of a jury finding. Sleek v. J. C. Penney Company, 3d Cir., 1963, 324 F.2d 467; Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp., 3d Cir., 1963, 325 F.2d 2. Here, the jury would, at best only be able to hazard a guess, rather than draw a logical inference, from the evidence as to appellant's present and future ability to climb. Cf. Wiles v. New York, Chicago and St. Louis Railroad Co., 3d Cir., 1960, 283 F.2d 328, cert. denied 364 U.S. 900, 81 S.Ct. 232, 5 L.Ed.2d 193; Bochar v. J. B. Martin Motors, Inc., 1953, 374 Pa. 240, 97 A.2d 813. In these circumstances, the court properly refused to permit what would have been an entirely conjectural finding of impairment of future earning power in favor of the party bearing the burden of proof on this issue.

A second assignment of error is also related to the question of future ability to perform work requiring climbing. Counsel explained a proposed and challenged line of interrogation of the employer's staff physician in these words:

"Dr. Hersh testified yesterday to the effect that it may be or will be that Mr. Dixon should do work on the level because of the condition in his right knee or right leg, but that a trial of such work as climbing would be necessary before you would be able to tell what his ability is.

"I propose to ask the doctor, on the basis of the testimony of Dr. Hersh, which I would read to him, whether in fact there will or will not be a restriction or disqualification of Mr. Dixon following the trial."

In substance counsel proposed to ask the witness what the employer would do if the plaintiff should be found unfit to perform services requiring climbing. The court refused to permit this inquiry.

Our earlier analysis of the medical and other evidence thought to show impairment of future ability to perform a signalman's duties has led us to the conclusion that proof was insufficient to support a finding of such impairment. It would, therefore, have been irrelevant to inform the jury how the employer would or might respond to that conjectural event.

The judgment will be affirmed.