In re Joanne J. PANZA, Debtor.

Stanley G. MAKOROFF, Chapter
7 Trustee, Movant,

v.

Joanne J. PANZA, Respondent.

Bankruptcy No. 97–27725–BM.
Motion No. 98–0135M.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 25, 1998.

Stanley G. Makoroff, Sable, Makoroff & Gusky, P.C., Pittsburgh, PA, Pro se.

Edward F. Voelker, Jr., Voelker & Associates, P.C., Pittsburgh, PA, for Debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Chief Judge.

The chapter 7 trustee has objected to an exemption debtor has claimed pursuant to 11 U.S.C. § 522(d)(10)(C) in funds deposited prior to the filing of the bankruptcy petition in a savings account that are directly traceable to her right to receive periodic disability benefit payments. The trustee denies that the funds in the savings account enjoy the same exempt status that her right to receive the payments unquestionably does.

Debtor asserts that the funds in the savings account enjoy the same exempt status under § 522(d)(10)(C) as does her right to receive the benefits.

Debtors' sole source of income is derived from the exempt disability payments. Utilizing debtor's rationale, each and every asset owned by debtor is directly traceable to this pension and exemptible pursuant to § 522(d)(10)(C). Clearly, this result was not contemplated by Congress when the Bankruptcy Code's exemption sections were crafted and, equally clearly, debtor's reasoning is flawed.

Accordingly, the objection to the claimed exemption will be sustained for reasons set forth below.

### FACTS

Joanne L. Panza ("debtor") filed a voluntary chapter 7 petition on October 22, 1997. The schedules attached to the petition indicate assets with a declared total value of $27,291.29, all of it personalty, and liabilities totaling $52,291.29, all of it owed to general unsecured creditors.

Among the items listed on Schedule B, Personal Property, are a savings account containing $19,211.94 and three fur coats and jewelry with a declared value of $7,000.00. Schedule B also indicates that debtor "receives disability benefits".

On Schedule C, Property Claimed As Exempt, debtor has claimed an exemption pursuant to 11 U.S.C. § 522(d)(10)(C) in $11,-323.94 of the funds in the above savings

account on the theory that they are "disability benefits". She also has claimed an exemption in the remainder of the funds in the savings account as well as $312.00 in cash pursuant to the "wild card" exemption at 11 U.S.C. § 522(d)(5).

Schedule F, Creditors Holding Unsecured Nonpriority Claims, indicates that, among other things, debtor owes $3,129.07 to a department store for a fur coat, $1,440.00 for "fur storage", and another $1,971.60 for "clothing". She also owes $16,000.00 to American Express for "hotels, restaurants, airline tickets, train tickets". In addition, debtor owes in excess of $20,000.00 to various banks for "cash advances".

Debtor is unemployed. She previously had worked for an agency of the federal government. Her statement of financial affairs indicates that debtor has received in excess of $23,000.00 per year in periodic disability payments since at least 1995. The record does not indicate when she began to receive such periodic payments.

Debtor's reported monthly net income exceeds her monthly expenses by $221.22. Schedule I, Current Income Of Individual Debtor(s), indicates that debtor's monthly net income, all of which is derived from monthly disability payments, is $1,879.16. Schedule J, Current Expenditures Of Individual Debtor(s), indicates monthly expenses totaling $1,657.94.

A rescheduled § 341 meeting of creditors was conducted on January 7, 1998, after debtor and her counsel failed to attend the § 341 meeting originally scheduled for November 26, 1997. Debtor indicated at the hearing that the funds in the savings account identified in Schedule B were derived from federal disability payments she had received prior to the filing of her bankruptcy petition.

On January 13, 1998, the chapter 7 trustee objected to the exemption in the amount of $11,223.94 which debtor had claimed pursuant to § 522(d)(10)(C) in the funds contained in the savings account. According to the trustee, the exemption set forth at § 522(d)(10)(C) does not extend to the funds that are traceable to the right to receive disability benefits. He did not, however, object to the exemption debtor had claimed pursuant to § 522(d)(5) in the remainder of the funds in the savings account that also are derived from the right to receive disability benefits.

A hearing on the trustee's objection to the above claim of exemption and debtor's opposition thereto was conducted on February 17, 1998.

## DISCUSSION

■ Section 522(d)(10)(C) of the Bankruptcy Code (11 U.S.C. § 522(d)(10)(C)) provides in relevant part as follows:

(d) The following property may be exempted under subsection (b)(1) of this section: . . . .

(10) The debtor's right to receive— . . .

(C) a disability . . . benefit; . . . .

The issue that must be decided in this instance is whether the exemption set forth at § 522(d)(10)(C) for a debtor's right to receive a disability benefit also applies to funds debtor sets aside prior to the filing of the bankruptcy petition that are directly traceable to such benefit. The chapter 7 trustee denies that § 522(d)(10)(C) extends to funds received prepetition that are traceable to the right to receive a disability benefit. Debtor maintains that § 522(d)(10)(C) applies to funds that are so traceable.

As far as we are able to determine, this issue has not been addressed by the United States Court of Appeals for the Third Circuit or by any other federal court of appeals. Those lower courts that have addressed the issue are in disagreement.

Some courts have held that the exemption set forth at § 522(d)(10) for the right to receive certain types of specified benefits applies *pari passu* to property that is traceable to that right. *See, e.g., In re Frazier*, 116 B.R. 675 (Bankr.W.D.Wis.1990); *In re Williams*, 171 B.R. 451 (D.N.H.1994); *In re Green*, 178 B.R. 533, 536 (Bankr.M.D.Fla. 1995).

Other courts have held that such property is not exempt, even if it is traceable to the right to receive a benefit that is exempt under § 522(d)(10). *See, e.g., In re Cesare*,

170 B.R. 37 (Bankr.D.Conn.1994); *In re Williams*, 181 B.R. 298 (Bankr.W.D.Mich. 1995).

We conclude for reasons set forth below that the latter cases are supported by the sounder arguments.

Certain of the cases that hold that traceable property is also exempt pursuant to § 522(d)(10)(C) rely on the "general rule" that depositing exempt funds into a bank account does not divest those funds of their exempt status. *In re Green*, 178 B.R. at 536; *In re Williams*, 171 B.R. at 453–54.[1]

They also reason that holding otherwise would defeat the purpose of having such exemptions in the first place. Recipients of exempt payments would not be able to put their benefits to practical use if the exemption dissolved upon negotiation of an exempt payment or upon its conversion into funds in a bank account. Creditors would be able to defeat the exemption simply by waiting until a benefit check was converted into cash or funds in a bank account and then attaching or levying upon the account. *In re Williams*, 171 B.R. at 454.

These arguments are not persuasive.

■ The right to claim an exemption is a statutory creation and is not derived from "equitable" (or other) considerations. If an exemption is not allowed by statute, it is not allowable. *In re Clark*, 711 F.2d 21, 23 (3d Cir.1983).

The overall structure of § 522(d) of the Bankruptcy Code leads us to conclude that funds in a bank account that are derived from (or traceable to) a right to receive a disability payment are not also exempt by virtue of § 522(d)(10)(C).

Subsections 522(d)(10) and 522(d)(11) differ in a critical respect. Subsection 522(d)(10) speaks only of a "debtor's right to receive" certain types of benefits or payments. Subsection 522(d)(11), by contrast, refers to both a "debtor's right to receive" certain types of benefits and payments as well as "property that is traceable" thereto.

This difference in the language employed leads us to infer that Congress was fully cognizant of the distinction between a "debtor's right to receive" something and "property that is traceable" thereto. We therefore should *not construe* § 522(d)(10)(C) as encompassing property that is "traceable to" the right to receive periodic disability payments, such as a savings account into which such payments are deposited. Such an interpolation into the text of § 522(d)(10)(C) would be unwarranted. *In re Cesare*, 170 B.R. at 39; *In re Williams*, 181 B.R. at 301.

The contention that disallowance of an exemption for property traceable to the right to receive a benefit that itself is exempt under § 522(d)(10)(C) would somehow undermine or defeat the purpose of such exemptions, *see, e.g., In re Williams*, 171 B.R. at 454, is unpersuasive. The "absurdity" which supposedly would result from such a reading would not arise in a chapter 7 case.

Subsection 522(d)(10)(C) expressly allows a debtor to exempt the *right* to receive disability benefits or payments. Once the right is exempted, it passes out of the bankruptcy estate. Conversion of such an exempted right *after the filing of the bankruptcy petition* to another form of property—e.g., into funds on deposit in a bank account—produces property that also is excluded from the bankruptcy estate[2].

Debtor's position that property traceable to a right to receive a disability benefit enjoys the same exempt status as does the right itself disregards the carefully-crafted scheme of exemptions Congress contemplated when it enacted § 522 of the Bankruptcy Code.

Debtor's bankruptcy schedules reveal that she has a penchant for expensive fur coats. She already owns three, all of which she has

---

1. This so-called "general rule" is not universally embraced. At least one court of which we are aware has taken issue with the "general rule" and concluded that an exemption is lost when property exempted by statute is converted into another form of property, unless the derivative form of property also is covered by a statutory exemption. *See In re Ehrich*, 110 B.R. 424, 429 (Bankr.D.Minn.1990).

2. It should be noted that the property at issue in this case was converted into funds *prior* to the filing of the bankruptcy petition.

claimed as exempt along with certain other items of personalty pursuant to § 522(d)(3) of the Bankruptcy Code. No party in interest objected to this claimed exemption.

Suppose for the sake of argument that debtor spent the $11,233.94 she now seeks to exempt to purchase a fourth fur coat instead of depositing it into a savings account. Because it is "traceable" to her right to receive a disability benefit, debtor no doubt would assert that the fourth fur coat is exemptible pursuant to § 522(d)(10)(C) for the same reason that the funds in the savings account supposedly are.

Congress has set an aggregate limit of $8,000.00 on the amount of the exemption a debtor may claim in household furnishings and goods, wearing apparel, etc. Debtor would not be able to exempt the full value of the hypothetical fourth coat under § 522(d)(3) because she already has exempted other items, including three fur coats, with an aggregate value that approaches the $8,000.00 upper limit.

If, as debtor no doubt would argue, she should be able to exempt the hypothetical fourth fur coat because it is "traceable" to her right to receive a disability benefit, debtor would be able to exempt wearing apparel with a value far exceeding the aggregate limit Congress set for wearing apparel when it enacted § 522(d)(3). So doing would require us to disregard the upper limits on the amount of allowable exemptions Congress established for various specified categories of property when it enacted § 522(d) as a whole.

Finally, the present case is readily distinguishable from In re Frazier in certain crucial respects.

The debtor in Frazier sought pursuant to 11 U.S.C. § 522(d)(10)(C) to exempt funds in a bank account which were traceable to debtor's right to receive social security disability benefits prior to the filing of the bankruptcy petition in that case. The decision in Frazier was based in substantial part upon the court's desire to "harmonize" the above language in § 522(d)(10)(C) with § 407 of the Social Security Act (42 U.S.C. § 407), which provides as follows:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent it does so by express reference to this section.

In arriving at its decision, the Frazier court placed great weight upon the provision that the right to receive such payments shall not be subject to the operation of any bankruptcy law and upon the provision that it may not be modified by any other law except to the extend that the other law expressly refers to § 407. The court sought to "harmonize" § 522(d)(10)(C) with § 407 by reasoning that funds in a debtor's bank account that are directly traceable to the right to receive social security disability benefits are also exempt under § 522(d)(10)(C). In re Frazier, 116 B.R. at 677–78.

The right to receive disability benefits giving rise to the funds debtor seeks to exempt in this case arise from a provision providing disability for federal employees rather than under the Social Security Act. The relevant provision governing restrictions on legal process against such benefits provides as follows:

(a) The money mentioned by this subchapter is not assignable, either in law or in equity, ... or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.

5 U.S.C. § 8346.

This provision, unlike 42 U.S.C. § 407, does not exclude bankruptcy law from affecting the exempt status of funds arising out of disability benefits paid to federal employees. Moreover, it does not preclude amendment thereof by subsequent federal law unless that law makes express reference to § 8346.

Subsection 522(d)(10)(C) is such a federal law. It makes funds traceable to a debtor's right to receive federal employee disability benefits part of the bankruptcy estate and subject to the reach of the chapter 7 trustee.

Based on the foregoing, we conclude that debtor may *not* utilize § 522(d)(10)(C) to exempt a portion of the funds in a savings account that are traceable to her right to receive federal employee disability benefits.